**JILL GANNON-NAGLE**
Law Office of Jill Gannon-Nagle, LLC
PO Box 283
Dillon, Montana 59725
Phone: (406) 683-9250
Fax: (406) 720-7701
jill@jgnlawoffice.com

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No.: 4:19-CR-00035-BMM |
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| ANTHONY JOSEPH BELTRAN, | |
| Defendant. | |

Anthony is a very generous person, respectful, responsible, and likes to be active.
-   Statement of Robert Beltran, Father of Anthony Beltran.

ANTHONY BELTRAN, by and through his counsel, Jill Gannon-Nagle,

respectfully submits the following sentencing memorandum in support of his request

for a below-Guidelines, mandatory minimum prison sentence of 120 months in

prison.

Mr. Beltran pled guilty to one count of possession with intent to distribute

methamphetamine, in violation of 18 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A) and Obstructing Justice, in violation of 18 U.S.C. § 1513(e). The Presentence Investigation Report ("PSR") calculates a Combined Total Offense Level of 33 and a Criminal History Category of VI, yielding a Guidelines range of 235-393 months. The possession with intent to distribute carries a mandatory minimum of ten years and a maximum of life imprisonment and the obstructing justice carries a maximum of ten years of imprisonment.

## ARGUMENT

### A. **Mr. Beltran's Background**

Mr. Beltran is a 45 year old son, father, brother, and friend. PSR ¶ 96. Mr. Beltran was born and raised mostly in California, moving around some after his parent's divorced in 1977. PSR ¶ 97. Mr. Beltran remained living with his mother, and admittedly dealt with some emotional and physical abuse due to his mother's alcoholism. PSR ¶ 97. Mr. Beltran remains close with all of his family, with significant support from his Father and siblings. PSR ¶ 96. Mr. Beltran is extremely proud of his children: Dillon, age 26, Anthony, age 24, and Adenius, age 11. PSR ¶ 97-98. Mr. Beltran prides himself on his ability to care for his children and support them, and is very proud of his children's many accomplishments. PSR ¶ 99.

Mr. Beltran is educated and skilled, having earned his GED in 2011, and

having self-educated in the construction trade throughout his adult life. PSR ¶ 119.

Mr. Beltran has specialized skills in the Construction trade, to include Industrial



Ironworker certificates, Rigger Certificates, and Rigger Fundamentals Certificates.

Mr. Beltran has maintained employment in the construction trade for many

years, and notably worked very hard. PSR ¶ 124. Mr. Beltran's employer Harold

Gilchrist stated that Mr. Beltran "could have done any construction job he was

tasked with" and indicated that although he had a drug problem, he was re-hirable.

PSR ¶ 124.

Mr. Beltran earned a very good living for most of his young adult life. His

hard work paid off, and he was financially stable at a young age. In 2009, Mr.

Beltran experienced great loss, losing his uncle, best friend, and grandfather in a

short amount of time. PSR ¶ 106. Hindsight allows Mr. Beltran to see that in that

time of great grief, he began to spiral out of control. PSR ¶ 106. Mr. Beltran began

using drugs to cope with the grief he suffered, and his years of incarceration began.

PSR ¶ 106. Mr. Beltran was diagnosed with bipolar disorder, PTSD, and Attention

Deficit Disorder while incarcerated, and continues to struggle with those issues.

Unfortunately, Mr. Beltran also learned of the profitability of the drug trade

during his years of use. When Mr. Beltran fell on hard times upon release from

incarceration, he began what he has called "the worst mistake of his life" in an

effort to make "quick money." PSR ¶ 112. Mr. Beltran began selling drugs in an

effort to maintain a financial lifestyle he was accustomed to.

Mr. Beltran takes responsibility for his choices and actions in relation to his

substance use. Mr. Beltran intends to take advantage of any opportunities provided

to him, and will continue to hold out hope to once again see his family in the

community.

B. **The Guidelines Weighting of "Pure" Methamphetamine Provides a
   Reason for Varying Downward**

Mr. Beltran is a co-defendant with two others for a total amount of

methamphetamine in the amount of 2,191 grams, found in a house where the co-

defendants housed their substances. A lab test of the substance showed this to be

"actual" methamphetamine, not an uncommon scenario. The base offense level of

Mr. Beltran was significantly raised as a result of the amount of actual

methamphetamine. As an example, had the guidelines contemplated the base

offense level as a mixed level, the 2,191 grams would allow for a base offense

level of 32. With Mr. Beltran's acceptance reduction, the offense level would be a

29, with a guideline range of 151-188. In other words, Mr. Beltran's base offense

level is significantly greater as a result of the consideration of the

methamphetamine being "actual" methamphetamine.

One flawed justification for the distinction between mixed methamphetamine

and actual methamphetamine is that "a defendant [who] is in possession of

unusually pure narcotics may indicate a prominent role in the criminal enterprise

and proximity to the source of the drugs." U.S.S.G. § 2D1.1, Application Note

26(c). This presumption was based on the idea that a middle-man would dilute the

drugs prior to sale in order to increase the profitability of the drugs. This logic is

certainly not the case at this time. The average methamphetamine purchased across

the United States tests as 93% purity, and most Federal drug cases involve "actual"

methamphetamine. Pure methamphetamine is no longer unique or rare, and is

certainly no longer an indicator of culpability for defendants. The Court should

consider that "actual" methamphetamine is most often used in the distribution of

methamphetamine cases, and bears no significance on the role of the person

possessing the methamphetamine.

C. **18 U.S.C. § 3553 Factors**

1. Nature and Circumstances of the Offense and Characteristics of Mr. Beltran

Mr. Beltran is a loved father, brother, friend, and son. Mr. Beltran has been

described as a hard worker, with an ability to maintain a stable life in the community. Mr. Beltran has taught himself how to work hard, and is self-taught in the valuable tools of the construction trade.

Mr. Beltran has spent a significant amount of time struggling with mental health issues, both treated and untreated. After experiencing a self-described mental breakdown in 2009 as a result of significant, unexpected loss of loved ones, Mr. Beltran began using drugs to cope with his mental health struggles.

Unfortunately, Mr. Beltran fell into the deep dark holes of addiction, and the lifestyle that comes along with addiction. It was not until Mr. Beltran was incarcerated that he was able to recognize that his mental health issues were significant. Not an uncommon response, Mr. Beltran self-medicated in the one way he was familiar with: using drugs. That cycle continued and eventually Mr. Beltran found himself involved in this Court. But this is not the end for Mr. Beltran. Mr. Beltran is more than the worst thing he has ever done. Mr. Beltran has limited Federal exposure, and has the ability to maintain sobriety and work towards bettering his mental health stability, both while incarcerated and in the community. Notably, Mr. Beltran has not had exposure to the Federal system in the past. Mr. Beltran's criminal history consists largely of misdemeanor offenses related to his substance use. PSR ¶ 52-81. Had Mr. Beltran been able to get ahold of his substance abuse issues, and recognized the part his mental health played in his

substance abuse, Mr. Beltran's path would have likely looked much different.

2. Seriousness of the Offense, Respect for the Law, Just Punishment for the Offense, Protection of the Public, and Deterrence

Mr. Beltran is bound to spend a significant period of time in federal prison. Mr. Beltran finds himself in a situation we are all too familiar with: having spent minimal time in custody for State criminal conduct, suddenly he finds himself facing more time than he has ever served as a result of his Federal criminal conduct. Mr. Beltran has spent 458 days in federal custody at the time of this writing, and looks to spend a significant amount more. No doubt Mr. Beltran understands the seriousness of the offense, and any sentence this Court imposes will promote respect for the law, and just punishment for the offense.

Even a minimum sentence would certainly protect the public from future conduct of Mr. Beltran. Mr. Beltran will serve a lengthy prison sentence and be provided opportunities for rehabilitation prior to any release. Upon release, Mr. Beltran will be subject to supervised release, providing further supervision and protection of the public. Without the dark cloud of substance use looming over Mr. Beltran, he will no doubt be a productive and successful man in the community, posing no risk to the safety of the public.

Deterrence is an obvious natural consequence of a several year sentence in federal prison. Mr. Beltran will no doubt be deterred from future criminal conduct

after serving that significant and lengthy sentence.

3. Avoiding Sentencing Disparities

This Court has seen many drug case sentences and has significant experience in comparing and contrasting sentences to avoid unwarranted sentencing disparities.

In 2019, the mean average for federal drug trafficking in Montana was 74 months, and the median average was 66 months. United States Sentencing Commission, *Statistical Information Packet Fiscal Year 2019*, District of Montana, Table 7. The Defendant's recommended sentence of 120 months lies above the mean average, contemplating the Defendant's involvement in this case, the facts and circumstances of the offense, and the criminal history category.

4. Providing the Defendant with Needed Educational, Vocational Training, Medical Care, or Other Corrective Treatment in the Most Effective Manner

Mr. Beltran requires drug addiction counseling and continued mental health treatment and awareness to address his addiction and involvement in this type of offense. Some time in prison is necessary and RDAP is available to prepare Mr. Beltran for his release into the community and preparation for living a lifestyle that does not involve using or selling drugs. Mr. Beltran has shown in his past years that he is an able, hard worker and has the ability to maintain in the community as a sober, productive member of his community.

## SENTENCING RECOMMENDATION

Mr. Beltran respectfully requests the Court sentence him to 120 months in prison with 5 years of supervised release. Mr. Beltran requests the Court recommend treatment programs for Mr. Beltran, in an effort to provide Mr. Beltran the ability to rehabilitate while incarcerated and provide Mr. Beltran with the tools to remain clean and sober upon his release from custody.

RESPECTFULLY SUBMITTED this 27th day of July, 2020.

by: _____
**Jill Gannon-Nagle**
*Attorney for Defendant*

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on July 27th, 2020, a copy of the foregoing document

was served on the following persons by the following means:

__1, 2___ CM-ECF
_____ Hand Delivery
_____ Mail
_____ E-Mail

1. Clerk of the United States District Court

2. Jessica Betley
   Assistant United States Attorney
   United States Attorney's Office
   PO Box 3447
   Great Falls, MT 59403
   Counsel for the United States of America

by: _____
     **Jill Gannon-Nagle**

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2) and CR 47.3, the body of the attached memorandum is proportionately spaced, has a typeface of 14 points or more, and the body contains 1,729 words, excluding the caption and certificate of compliance.

by: _____
  **Jill Gannon-Nagle**